UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRAMMER INDUSTRIES, INC.,        )
                                 )
          Plaintiff,             )
     v.                          )
                                 )
BEACH MOLD AND TOOL, INC.,       )
and BEACHMOLD MEXICO, S. DE      )
R.L. DE C.V., PLASTIC INJECTION  )
OPERATING (PIO) COMPANY OF       )
MEXICO, LLC, AND AMERICAN        )
INDUSTRIAL ACQUISITION           )
CORPORATION d/b/a iP3 PLASTICS   )     Case No. 15-CV-12694
MEXICO                           )     Hon. Paul D. Borman
                                 )     Magistrate Judge R. Steven
          Defendants,            )     Whalen
and                              )
                                 )     Demand for Jury Trial
BEACH MOLD AND TOOL, INC.,       )
                                 )
          Cross-Claimant         )
     v.                          )
                                 )
AMERICAN INDUSTRIAL              )
ACQUISITION CORP. d/b/a iP3      )
Plastics Mexico                  )
                                 )
          Cross-Defendant.       )
                                 )
                                 )

---

## PLAINTIFF'S CORRECTED VERIFIED MOTION FOR ORDER PERMITTING ALTERNATIVE SERVICE AND FOR LEAVE TO AMEND COMPLAINT DUE TO RECENTLY DISCLOSED SALE OF THE MEXICO FACILITY

Plaintiff Grammer Industries, Incorporated ("Grammer") respectfully moves

this Court to allow Plaintiff to serve Defendant Beachmold Mexico S. de R.L. de

C.V. ("Beachmold Mexico") pursuant to Federal Rule of Civil Procedure Fed. R. Civ. P. 4(e)(1) and MCR 2.105(I).  Plaintiff's original motion and brief [Dkt. No. 59] was mistakenly filed without incorporating revisions.  No corrections have been made to the exhibits in Plaintiff's original motion, with the exception of Corrected Exhibit Q, which has been separately filed.  Pursuant to E.D. L.R. 7.1(a) Grammer sought concurrence in the relief requested.  Counsel for Beach Mold and Tool, Inc. ("Beach Mold") concurred with Grammer's request, but concurrence has not yet been obtained from the other counsel.  In support of this Motion, Grammer states:

1.    Grammer is an automotive supplier that supplies automotive assemblies to original equipment manufacturers.  Beach Mold is a manufacturing company that manufactures tooling and supplies parts molded from the tooling to automotive companies such as Grammer.

2.    Beach Mold's website provided that it manufactures tools and parts in its facilities in New Albany, Indiana (the "Indiana Facility") and Queretaro, Mexico (the "Mexico Facility") (Copy of webpage from Beach Mold's website, attached as Ex. A).

3.    Grammer contacted Beach Mold regarding a quote to build tools and for future consideration to build parts from the tools (the "Parts"), which in turn

would be utilized by Grammer to provide assemblies for Fiat Chrysler Automotive LLC ("FCA") in connection with FCA's RT program (the "Program").

4.      In response, Beach Mold issued a quotation (the "Quotation") to Grammer for tooling to be built at Beach Mold's Indiana Facility and for the Parts to be "manufactured at our Queretaro, Mexico Facility." (Ex. B, Beach Mold Quotations).

5.      The Beach Mold Quotation was issued from Beach Mold's Mexico Facility in Queretaro, Mexico 76220.  *Id.*

6.      FCA through its Tier One Supplier, Magna, awarded the tooling for the Program to Grammer, and Grammer issued certain purchase orders to Beach Mold for production of certain tooling (the "Purchase Orders").  (Purchase Orders, attached as Ex. C).  The Purchase Orders provide that the design and manufacture of the tooling would occur in New Albany, Indiana, and the molding from Queretaro, Mexico.  (Ex. C).

7.      Grammer also contracted with Advance Mold Incorporated ("Advance") for a fixture that would be used to produce the Parts at Beach Mold's Mexico Facility.  (Ex. D, Advance Mold Purchase Order).[1] This fixture and the

_____

[1] The fixture manufactured by Advance was supplied to Beach Mold.

4832-3906-2838.2

tooling produced in connection with the Purchase Orders is collectively referred to as the "Tooling". (Ex. C).

8.     Under the Purchase Orders, Beach Mold remained "responsible for the components and Tooling through the life of the project." (Ex. C).

9.     Following completion of the Tooling in Beach Mold's Indiana Facility, the Tooling was transferred by Beach Mold to its Mexico Facility for use to build the Parts in the event that FCA awarded a contract for the assemblies.

10.    However, FCA placed the Program on hold and, in 2015, FCA requested proof of possession of the Tooling.  In turn, Grammer promptly requested the Tooling from Beach Mold.

11.    When Grammer requested return of the Tooling from Beach Mold, it responded to Grammer that the assets of the Mexico Facility had been sold to iP3 Plastics Mexico, who Beach Mold claimed was responsible for return of the Tooling, but who Beach Mold also claimed was no longer in possession of the tooling. (Ex E, Beach Mold's Response Plaintiff's First Requests for Admission and Second Discovery Requests, and Answer to Interrogatory No. 2); (Ex. F, Beach Mold's Responses to Plaintiff's Third Set of Interrogatories and Second Request for Production).

12.    Because Beach Mold did not return the Tooling to Grammer and it thus could not deliver it to FCA, or provide evidence that it was available for

4

return, Grammer had to reimburse FCA for the Tooling.   This action ensued immediately.

13.     In its Answer, Beach Mold asserted that the Mexican Facility was a "separate and distinct corporation" from Beach Mold named "Beachmold Mexico S. de R.L. de C.V." ("Beachmold Mexico") and that "[i]n 2012 the assets of Beachmold Mexico were sold to iP3 Mexico." (Dkt. 2, Ans. ¶5).   Subsequently, Grammer set out to determine the identity of iP3 Mexico.

14.     On November 9, 2015, Beach Mold issued responses to Grammer's First Set of Interrogatories and Requests for Production in which Beach Mold responded to a series of requests concerning the subject transfer and sale documents:   "All documents that Beach has been able to locate after a reasonable search that might be considered responsive are available…"   However, Beach Mold did not produce any documentation regarding the transfer or sale of the Mexico Facility, the transfer of Tooling, or Beach Mold's participation in any such transaction.   (Ex. G,  Beach Mold's Response to First set of Interrogatories and Response to Request for Production Nos. 1-5).

15.     Counsel for Grammer then made a series of inquiries with counsel for Beach Mold concerning such documentation and was advised on November 23, 2015, that "this will confirm that Beach Mold "has no additional documents to produce,  including any  documents concerning  the possession  and  transfer of

5

possession of the Chrysler RT tooling by Beach or by anyone." (Ex. H, 11/23/2015 email).

16.     On December 22, 2015, Grammer requested that Beach Mold identify its direct or indirect ownership interests in the entity to whom possession of the Tooling was transferred. Beach Mold Responded: "None." (Ex. E, Beach Mold's Responses to Plaintiff's First Requests for Admission and Second Discovery Requests, Answer to Interrogatory No. 2).

17.     In connection with a review of public records, it was ascertained that AIAC holds itself out as "iP3 Plastics Mexico." (AIAC webpage, attached as Ex. I).

18.     Moreover, the iP3 family of businesses is owned or controlled by AIAC include the Mexico Facility. (Ex. J, Excerpt from iP3 webpage).

19.     Thus, based on the Answer and public records, Grammer believed that the assets of the Mexico Facility were transferred to AIAC.

20.     Moreover, in its Cross-Claim filed on March 14, 2016, Beach Mold also identified the successor to the Mexico Facility as "iP3 Plastics Mexico, d/b/a American Industrial Acquisition Corporation," and further alleged that "Beachmold Mexico was sold to iP3." (Dkt. No. 16) (Cross-Cl. at Intro ¶ and ¶7).

21.    It was on the this basis and public information that AIAC does business as iP3 Plastics Mexico that Grammer amended its Complaint and added AIAC as a party.

22.    More discovery and follow up to discovery responses ensued. On April 5, 2016, Beach Mold represented to Grammer that "we have not yet been able to find any written agreements between these entities that have any bearing on the Tooling issue in this lawsuit." (Ex. K, 4/5/2016 email).

23.    On May 31, 2016, Beach Mold responded to Grammer's Third Set of Interrogatory Requests in which Grammer inquired regarding common interests in the Beach Mold facilities.  Beach Mold stated there are no Beach family members who "currently" hold an interest in "Beachmold Mexico" and that such interest was "sold to American Industrial Acquisition Corporation d/b/a iP3 Plastics ('iP3') in 2012."  (Ex. F, Beach Mold's Answer to Interrogatory No. 1).

24.    On June 3, 2016, Beach Mold produced the relevant sales agreement (the "Capital Interests Purchase Agreement") concerning the sale of the Mexico Facility.  (Ex L, Capital Interest Purchase Agreement).

25.    The Capital Interests Purchase Agreement identifies that Beach Industries LLC, owned by certain members of the Beach family (some having common ownership interest in Beach Mold), sold its interest in the Mexico Facility to a holding company and an operating company, both apparently owned or

7

controlled by American Industrial Acquisition Corporation and known, as "Plastic Injection Holding (PIH) Company of Mexico LLC" ("PIH"), and "Plastic Injection Operating (PIO) Company of Mexico, LLC" ("PIO").  (Ex. L).

26.   The Capital Interest Purchase Agreement provides that PIO and PIH have a principal place of business at 250 Park Avenue, New York New York, and that notice under the agreement is to be provided to Leonard Levie.  *Id.*

27.   Additionally, the officer for PIO and PIH that executed the Capital Interest Purchase Agreement and Sales Commission Agreement is Marcus Collardin.  *Id.*

28.   Defendant AIAC has a place of business at 250 Park Avenue, New York New York, and Leonard Levie is the Chairman of AIAC (Ex. M, Letter from L. M. Levie).

29.   Beach Mold is also a party to the Capital Interests Purchase Agreement.

30.   A "Services Agreement" dated August 5, 2012, also produced by Beach Mold to Grammer on June 3, 2016, required Beach Mold to provide the buyers and the Mexico Facility with certain operational services following the sale.

31.   An undated "Management Agreement," also produced by Beach Mold to Grammer on June 3, 2016, required Beach Mold to provide financing services, logistics, and strategic planning for the Mexico Facility.

8

32.    These documents reveal that Beach Mold was, at least in part, managing and servicing the Mexico Facility and was a party to the sale agreement for the Mexico Facility.

33.    A Sales Commission Agreement dated August 12, 2015, between Beach Mold and PIH provides that PIH, "through its sales force develops opportunities for the production of plastic parts in Mexico." (Ex. L, at Ex. 7.1.6.C).

34.    The Capital Interests Purchase Agreement required the Sales Commission Agreement be executed by PIH, PIO and Beach Mold prior to closing.

35.    The Sales Commission Agreement defines PIH as "MexicoCompany." *Id.*

36.    The Sales Commission Agreement further states that Beach Mold and PIH "desire to enter a mutually beneficial relationship to source products in Mexico that MexicoCompany can produce." *Id.* Thus, the Sales Commission Agreement clearly created an agency relationship between Beach Mold and PIH.

37.    PIH subsequently changed its name to iP3 North America, LLC. (Ex. N, PIH Amendment to Articles of Organization).

38.    The Sales Commission Agreement provides that notice to MexicoCompany shall be made to PIH/iP3North America at 250 Park Avenue,

4832-3906-2838.2

New York, New York, attn. Mr. L. M. Levie, the headquarters for AIAC. (Ex. O, Hoovers Report; Ex. M, Letter from Mr. Levie).

39.    PIH was listed as a defunct entity by the State of Nevada in June 2016. (Ex. P, Nevada Secretary of State Report).

40.    It was recently learned that MexicoCompany in or about June 2016 sold the assets of the Mexico Facility to a third party.

41.    Under Nevada law, consistent with Michigan law, when a limited liability company distributes assets of the company without providing for its liabilities, the members of the company can be held responsible for such liabilities. Nevada Limited Liability Companies Act, NRS. 86.343; *In re Rhodes Companies, LLC*, 2013 U.S. Dist. LEXIS 76921 (D. Nev. 2013).

42.    Moreover, the members of limited liability companies owe a fiduciary duty to creditors of insolvent companies, *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F. Supp. 2d 1013, 1026 (D. Nev. 2009), and a creditor has a fraudulent transfer claim against the transferee of the proceeds of a debtor when the claim arose prior to the transfer and the debtor made transfers, such as distributions to members, without reasonably equivalent value, NRS 112.150; NRS 112.190; *Pat Clark Sports Inc. v. Champion Trailers, Inc.*, 487 F. Supp. 2d 1172, 1177 (D. Nev. 2007).

4832-3906-2838.2

43.    The above law permits claims against AIAC, and possibly other members, not only as a party in control of its subsidiaries and hence the Mexico Facility, but as a limited liability company member of the entities that liquidated the Mexico Facility.

44.    As a result of these newly disclosed facts, Plaintiff requests leave to amend the Complaint to reflect these new events and resulting claims.  A corrected proposed Third Amended Complaint is attached as Corrected Ex. Q.

45.    In addition, Plaintiff requests that it be granted alternative service on the liquidated entity, Beachmold Mexico d/b/a/ iP3 Mexico, by serving one of its members, PIO or PIH/iP3 North America, or their member, AIAC, as it appears from the liquidation that AIAC may be the only entity still conducting business following the subject liquidation and distributions.

46.    Under these circumstances, alternative service for Beachmold Mexico upon d/b/a iP3 Mexico upon PIH, PIO/iP3 North America, or AIAC is also proper.

47.    Beachmold Mexico/iP3 Mexico had received notice of the Summons and Second Amended Complaint filed in this matter as a copy was sent to the plant manager at Av La Griega No. 102 in Queretaro, Mexico, 76220 prior to the notice of the sale of the assets of the Mexico Facility.

11

Respectfully submitted,

**FOLEY & LARDNER LLP**


By: /s/ Andrew B. Fromm
    Mark A. Aiello (P43012)
    Andrew Fromm (P79185)
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100

Date:  October 14,  2016          *Attorneys for Plaintiff*

12

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| GRAMMER INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BEACH MOLD AND TOOL, INC., | ) | |
| and BEACHMOLD MEXICO, S. DE | ) | |
| R.L. DE C.V., PLASTIC INJECTION | ) | |
| OPERATING (PIO) COMPANY OF | ) | |
| MEXICO, LLC, AND AMERICAN | ) | |
| INDUSTRIAL ACQUISITION | ) | |
| CORPORATION d/b/a iP3 PLASTICS | ) | Case No. 15-CV-12694 |
| MEXICO | ) | Hon. Paul D. Borman |
| | ) | Magistrate Judge R. Steven |
| Defendants, | ) | Whalen |
| and | ) | |
| | ) | Demand for Jury Trial |
| BEACH MOLD AND TOOL, INC., | ) | |
| | ) | |
| Cross-Claimant | ) | |
| v. | ) | |
| | ) | |
| AMERICAN INDUSTRIAL | ) | |
| ACQUISITION CORP. d/b/a iP3 | ) | |
| Plastics Mexico | ) | |
| | ) | |
| Cross-Defendant | ) | |
| | ) | |

## PLAINTIFF'S CORRECTED BRIEF IN SUPPORT OF VERIFIED MOTION FOR ORDER PERMITTING ALTERNATIVE SERVICE AND FOR LEAVE TO AMEND COMPLAINT DUE TO RECENTLY DISCLOSED SALE OF MEXICO FACILITY

**STATEMENT OF ISSUE PRESENTED**

1.   Is Plaintiff entitled to granting of its request to served Defendant Beachmold Mexico S. de R.L. de C.V. pursuant to Fed. R. Civ. P. 4(e)(1) and MCR 2.105(I)?

Answer.  Yes

2.  Should Plaintiff be granted leave to file an amended complaint based on newly disclosed facts?

Answer. Yes

4832-3906-2838.2

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases**

*Decker v. Brookstone Invs., LLC*,
  2012 U.S. Dist. LEXIS 70471 (E.D. Mich. 2012)………………..……....7

*Donati v. Ford Motor Co. Gen. Ret. Plan.*,
  2014 U.S.  Dist. LEXIS 100014, at *10 (E.D. Mich. 2014)……..……...9

*Epicentre Strategic Corp. v. Cleveland Constr.*,
  2007 U.S. Dist. LEXIS 15971, (E.D. Mich. 2007)…………..………....6

*Grabow v. County of Macomb*,
  2012 U.S. Dist. LEXIS 140551 (E.D. Mich. 2012)………………..…….9

*In re Rhodes Companies, LLC*,
  2013 U.S. Dist. LEXIS 76921 (D. Nev. 2013)……………………..……8

*JPMorgan Chase Bank, N.A. v. KB Home*,
  632 F. Supp. 2d 1013, 1026 (D. Nev. 2009)……………………….…..8

*Moore v. City of Paducah*,
  790 F.2d 557 (6th Cir. 1986)……………………………………..……9

*Pat Clark Sports Inc. v. Champion Trailers, Inc.*,
  487 F. Supp. 2d 1172, 1177 (D. Nev. 2007)……………………….…...8

**Rules**

Fed R. Civ. P. 4(e)(1)…………………………………………………………6

Fed. R. Civ. P. 15(a)…………………………………………………………..9

MCR 2.105(I)…………………………………………………………………6

4832-3906-2838.2

**STATEMENT OF FACTS**

Plaintiff Grammer Industries, Inc. ("Grammer") is an automotive supplier that supplies automotive assemblies to original equipment manufacturers. Beach Mold and Tool, Inc. ("Beach Mold") is a manufacturing company that manufactures tooling and supplies parts molded from the tooling to automotive companies such as Grammer. Grammer contracted with Beach Mold to build certain tools (the "Tooling") and for future consideration to build parts from the Tooling which would be utilized by Grammer to provide assemblies for Fiat Chrysler Automotive LLC ("FCA") in connection with FCA's RT program. Beach Mold represented to Grammer that the Tooling would be built at Beach Mold's Indiana facility, and that the parts would be manufactured at Beach Mold's Mexico facility (the "Mexico Facility") (Ex. B).

Under the contracts, Beach Mold remained responsible for the Tooling through the life of the project. (Ex. C). Beach Mold transferred the Tooling to its Mexico Facility for use to build the parts in the event that FCA awarded a contract for the assemblies. However, FCA placed the program on hold, and in 2015, requested proof of possession of the Tooling. When Grammer promptly requested return of the Tooling, from Beach Mold, it responded that the Mexico Facility had been sold to iP3 Plastics Mexico, who Beach Mold claimed was responsible for

4

return of the Tooling, but who Beach Mold also claimed was no longer in possession of the Tooling. (Ex. E and F).

Grammer set out to determine the identity of iP3 Mexico.  In connection with a review of public records, it was ascertained that AIAC holds itself out as iP3 Plastics Mexico. (Ex. I).   Moreover, the iP3 family of businesses owned or controlled by AIAC include the Mexico Facility. (Ex. J).   Additionally, in its Crossclaim filed on March 14, 2016, Beach Mold identified the successor of the Mexico Facility as iP3 Plastics Mexico d/b/a American Industrial Acquisition Corporation.

In June 2016, Beach Mold produced a "Capital Interests Purchase Agreement" concerning the sale of the Mexico Facility.  The Capital Interests Purchase Agreement identifies that the Mexico Facility was sold to Plastic Injection Holding (PIH) Company of Mexico LLC ("PIH") and Plastic Injection Operating (PIO) Company of Mexico LLC ("PIO"). (Ex. L.)  A Sales Commission Agreement between Beach Mold and PIH also provides that PIH is the "MexicoCompany" and is to produce parts in Mexico (Ex. L, at Ex. 7.1.6.C).  The Sales Commission Agreement therefore clearly created an agency relationship between Beach Mold and PIH.  PIH subsequently changed its name to iP3 North America, LLC. (Ex. N).   The Sales Agreement provides that notice to MexicoCompany shall be made to the Mr. L. M. Levie, at the headquarters of

5

AIAC. (Ex. L). PIH was listed as a defunct entity by the State of Nevada in June 2016. (Ex. P).

It was recently learned that MexicoCompany a/k/a the Mexico Facility controlled by AIAC through its subsidiaries PIH/iP3 North America and PIO in June 2016 sold the assets of the Mexico Facility to a third party.

Because Beachmold Mexico has been liquidated, Plaintiff requests that it be granted alternative service on the liquidated entity, Beachmold Mexico d/b/a/ iP3 Mexico, by serving one of its members, PIO or PIH/iP3 North America, or their member, AIAC, as it appears from the liquidation, that AIAC is the only entity still conducting business following the subject liquidation and distributions. Moreover, Plaintiff requests leave to file an amended complaint based upon PIO, PIH/iP3 North America and AIAC's distribution of assets relating to the Mexico Facility without providing for its liabilities.

**ARGUMENT**

## I.    Alternative Service Should Be Permitted Under Fed. R. Civ. P. 4(e)(1).

Where a party such as Beachmold Mexico has been liquidated or has gone out of business, the Court allows alternative service upon that party's members. *Epicentre Strategic Corp. v. Cleveland Constr.*, 2007 U.S. Dist. LEXIS 15971, at *38 (E.D. Mich. 2007). The Court should likewise grant Plaintiff's motion for alternative service on the members of Beachmold Mexico. Under MCR 2.105(I)

6

"on a showing that service of process cannot be reasonably completed as provided by this rule, the court may order service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard." MCR 2.105(I).

Alternative service of process for Beachmold Mexico upon PIO, PIH/iP3 North America, or AIAC is proper because the assets of the Mexico Facility were recently sold to a third party. Beachmold Mexico is therefore apparently out of business, and has been liquidated by its members. Therefore, Plaintiff must be allowed to make service of process on Beachmold Mexico by alternative means. Specifically, service of process on Beachmold Mexico under MCR 2.105(I) is authorized by Fed R. Civ. P. 4(e)(1). *Epicentre Strategic Corp. v. Cleveland Constr.*, 2007 U.S. Dist. LEXIS 15971, at *38 (E.D. Mich. 2007).

Beachmold Mexico had received notice of the Summons and Second Amended Complaint filed in this matter because a copy of the Summons and Second Amended Complaint was sent to the plant manager prior to the notice of the sale of assets of the Mexico Facility. Courts have authorized a wide variety of alternative methods of service, including email where the plaintiff's proposed service is reasonably calculated to give the defendant actual notice of the proceedings. *Decker v. Brookstone Invs., LLC*, 2012 U.S. Dist. LEXIS 70471 (E.D. Mich. 2012). Here there is no question that service upon PIO, PIH/iP3

7

Plastics North America, or AIAC is reasonably calculated to give Beachmold Mexico actual notice of the proceedings.

## II.   Plaintiff Should be Granted Leave to Amend The Complaint

On August 19, 2016, it was recently disclosed that the Mexico Facility was sold by the members of Beachmold Mexico, PIH/iP3 North America and PIO, and that the proceeds of the sale have been or will be distributed to the members without providing for liabilities.  Under Nevada law, consistent with Michigan law, when a limited liability company distributes assets of the company without providing for its liabilities, the members of the company can be held responsible for such liabilities. Nevada Limited Liability Companies Act, NRS. 86.343;  *In re Rhodes Companies, LLC*, 2013 U.S. Dist. LEXIS 76921 (D. Nev. 2013).

Moreover, the members of limited liability companies owe a fiduciary duty to creditors of insolvent companies, *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F. Supp. 2d 1013, 1026 (D. Nev. 2009), and a creditor has a fraudulent transfer claim against the transferee of the proceeds of a debtor when the claim arose prior to the transfer and the debtor made transfers, such as distributions to members, without reasonably equivalent value, NRS 112.150; NRS 112.190; *Pat Clark Sports Inc. v. Champion Trailers, Inc.*, 487 F. Supp. 2d 1172, 1177 (D. Nev. 2007). The above law permits claims against entities and members that liquidated the Mexico Facility and against those entities' members. As a result of these newly

8

disclosed facts, Plaintiff requests leave to amend the Complaint to reflect these new events and resulting claims.

Fed. R. Civ. P. 15(a) provides that "leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 181 (1962) (internal quotation marks omitted).  The "thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than on the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986) (citation omitted). Although the grant or denial of an opportunity to amend is within the discretion of the court "in the absence of any apparent or declared reason—such as undue delay bad faith or dilatory motive on the part of the movant…the leave sought should, as the rules require, be freely given." *Foman*, 371 U.S. at 182.

Where a proposed amended complaint adds new factual allegations based upon the record and the new factual allegations do not appear to have been presented in bad faith or with dilatory motive, leave to amend should be granted. *Donati v. Ford Motor Co. Gen. Ret. Plan.*, 2014 U.S. Dist. LEXIS 100014, at *10 (E.D. Mich. 2014).  Leave to amend should be freely granted when justice requires, which includes learning new facts during discovery or specific parties that may be liable.  *Grabow v. County of Macomb*, 2012 U.S. Dist. LEXIS 140551 (E.D. Mich. 2012).  In *Grabow*, after conducting discovery and a month before the close of discovery, plaintiff sought leave to include additional factual allegations,

counts and parties. *Id.* at *5. The court found the absence of any prejudice to the original defendant and that leave to amend should be freely granted. *Id.* In the instant case, the close of fact discovery is not until November 25, 2016, nearly three months from now. (Dkt. No. 15). As in *Grabow*, leave to amend should be freely given. Where a plaintiff decides to advance a new claim as a result of discovery, "liberal amendment of the complaint is provided for by Rule 15(a)." *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).

## CONCLUSION

For the foregoing reasons, the Court should grant Grammer's motion and issue an order permitting Grammer to make alternate service upon Beachmold Mexico and should grant Plaintiff leave to amend the complaint.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:/s/ Andrew B. Fromm
   Mark A. Aiello (P43012)
   Andrew B. Fromm (P79175)
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100

Date:  October 14, 2016    *Attorneys for Plaintiff*

10

**VERIFICATION**

STATE OF MICHIGAN      )
                       ) SS.
COUNTY OF WAYNE        )

I, Andrew B. Fromm, being first duly sworn, hereby verify the facts stated in Plaintiff's Corrected Verified Motion for Order Permitting Alternative Service and for Leave to Amend Complaint and Brief in Support are true and correct to the best of my personal knowledge, information and belief.

Andrew B. Fromm

The foregoing instrument was subscribed and sworn to before me this 14th day of October 2016.

Notary Public, _Wayne_ County, MI

My commission expires: _01/03/2019_

SOLITA GAYLE RAY
Notary Public - Michigan
Wayne County
My Commission Expires Jan 3, 2019
Acting in the County of _Wayne_

4832-3906-2838.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of Plaintiff's Corrected Verified Motion for Alternative Service and Motion for Leave, and this Certificate of Service were filed electronically on October 14, 2016 with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record and by mail upon counsel for AIAC and PIO at the following address:

Gary K. August
Zausmer, August & Caldwell, P.C.
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334
*Counsel for Plastic Injection Operating Company of Mexico*

Erik C. Stein
Gallagher Sharp
211 West Fort Street
Suite 600
Detroit, MI 48226
*Counsel for American Industrial Acquisition Corporation*

/s/ Andrew B. Fromm
Andrew B. Fromm

4832-3906-2838.2