UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRAMMAR INDUSTRIES, INC.,

        Plaintiff,                       No. 15-12694

v.                                    District Judge Paul D. Borman
                                        Magistrate Judge R. Steven Whalen

BEACH MOLD AND TOOL, INC.,
ET AL.,

        Defendants.
                                    /

**REPORT AND RECOMMENDATION**

Before the Court is a motion for dismissal filed by Defendants/Cross-Defendants Beachmold Mexico, S. de R.L. de C.V. ("Beachmold Mexico"), Plastic Injection Operating Company of Mexico, LLC ("PIO"), and Plastic Injection Holding Company of Mexico, LLC, n/k/a iP3 North America, LLC ("iP3") [Doc. #102], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). Because the Court does not have personal jurisdiction over these Defendants, I recommend that the motion be GRANTED.

**I.    FACTS**

Plaintiff Grammer Industries, Inc., ("Plaintiff") is a South Carolina corporation, with its principal place of business in Troy, Michigan, that supplies automotive assemblies to automotive manufacturers. Defendant Beach Mold and Tool, Inc. ("Beach Mold, Inc.") is a corporation located in Indiana that manufactures tooling and parts that are molded from that tooling. In its Third Amended Complaint ("TAC")[Doc. #68], Plaintiff alleges that it contacted Beach Mold, Inc. regarding a quote to build tools, and

for future consideration to build parts with those tools, that Plaintiff would use in a potential contract with a Fiat Chrysler, LLC ("FCA") program. TAC, ¶ 17. Plaintiff alleges that Beach Mold, Inc. issued a price quotation to Grammer, providing that the tooling would be built at Beach Mold's Indiana facility, and the parts would be "manufactured at our Queretaro, Mexico Facility." *Id*. ¶ 18. Plaintiff also contracted with Advance Mold Incorporated to manufacture a fixture that would be used to produce parts at the Mexico facility, and that fixture was delivered to Beach Mold. *Id*. ¶ 21.[1]

Plaintiff alleges that the purchase orders from Beach Mold, Inc. "formed the Contract between Grammer and Beach Mold." *Id*. ¶ 25.

Plaintiff states that FCA placed the program on hold, and in 2015 requested proof of possession of the tooling; in turn, Plaintiff requested the tooling from Beach Mold, Inc.. *Id*. ¶ 27. In response, Beach Mold, Inc. informed Plaintiff "that the assets of the Mexico Facility, including the Tooling, had been sold and/or transferred to iP3 Mexico." *Id*. ¶ 28. Plaintiff claims that because Beach Mold, Inc. did not return the tooling to it, or even provide evidence that it was available for possession, Plaintiff had to reimburse FCA for the tooling. *Id*. ¶ 29.

Plaintiff alleges that around August of 2012, "owners or controlling interests common to Beach Mold and Beachmold Mexico transferred interest in Beachmold Mexico to PIO and PIH," *Id*. ¶ 34, and that upon information and belief, "PIH n/k/a iP3 North America is or was an inactive entity, and AIAC is the successor to PIH." *Id*. ¶ 35. Plaintiff alleges that the assets of Beachmold Mexico (which would include the tooling at issue) were sold, that the proceeds from the sale "are or will be distributed to the owner

---

[1] In its answer to the TAC, Beach Mold admits that the tooling was shipped to Beachmold Mexico for production of parts, "with Grammer's agreement." *Answer* [Doc. #80], ¶ 26.

members, PIO and iP3," and that in turn, "such proceeds will or have been distributed to the member of PIO and iP3 North America, who upon information and belief, is AIAC."[2] *Id*. ¶ 37.

Plaintiff brings a claim of breach of contract and conversion against Beachmold Mexico, *Id*., Count III, and a claim of breach of fiduciary duty and the Nevada Limited Liability Companies Act against PIO and iP3, *Id*., Count IV. In Count IV, Plaintiff more succinctly describes the distribution of assets, including the tooling, as follows: The assets of Beachmold Mexico were sold in 2016; Beachmold Mexico, which no longer conducts business, distributed the proceeds of the sale to PIO and iP3;, PIO and iP3 in turn distributed the proceeds to AIAC. *Id*. ¶¶ 66-69.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a complaint for lack of personal jurisdiction over a party, and the party asserting the existence of personal jurisdiction bears the burden of showing making at least a prima facie showing of its existence. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-1262 (6th Cir.1996); *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir.1992); *Kerry Steel, Inc. v. Paragon Indust., Inc*., 106 F.3d 147, 149 (6th Cir.1997). "Without personal jurisdiction over an individual ... a court lacks all jurisdiction to adjudicate that party's right, whether or not the court has valid subject matter jurisdiction.*" Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir.1991).

---

[2] AIAC has a pending motion to dismiss [Doc. #91]. However, AIAC's counsel was granted leave to withdraw, and the motion has been held in abeyance pending new counsel filing an appearance within 30 days of the order allowing former counsel's withdrawal [Doc. #165].

### III. DISCUSSION

To be subject to the jurisdiction of a court in the forum state, the defendant must have sufficient minimum contacts with that state that the action there "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *See also Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 108–09 (1987)("The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant"); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)("'[T]he constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum contacts' in the forum State'")(quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

In *Kerry Steel, Inc*., 106 F.3d at149, the Court described the two methods by which a federal court could acquire personal jurisdiction over a defendant:

> "Personal jurisdiction comes in two flavors: 'general' jurisdiction, which depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and 'specific' jurisdiction, which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum. *Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414–415 & nn. 8–10, 104 S.Ct. 1868, 1872 & nn. 8–10, 80 L.Ed.2d 404 (1984); *Third Nat'l Bank in Nashville v. WEDGE Group, Inc*., 882 F.2d 1087, 1089 (6th Cir.1989), cert. denied, 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990)."

#### A. General Jurisdiction

M.C.L. § 600.711 sets forth three bases upon which a Court can establish general personal jurisdiction over a corporation:

> "The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the

> courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> (1) Incorporation under the laws of this state.
>
> (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.1
>
> (3) The carrying on of a continuous and systematic part of its general business within the state.

Neither Beachmold Mexico, PIO, nor iP3 are incorporated in Michigan. Nor have these Defendants consented to Michigan's jurisdiction. This leaves the question of whether the Defendants have "continuous and systematic" business contacts with Michigan.

General jurisdiction is "exercisable when a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. at 318); *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408 (1984). More specifically, general jurisdiction applies when "a foreign corporation's '[contacts] with the State are so 'continuous and systematic' as to render [it] essentially *at home* in the forum State.'" *Bauman*, 571 U.S. at 122 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)) (emphasis added).

In *Jones v. Blige*, 2006 WL 1329247, at *2 (E.D. Mich. 2006), the Court reviewed case law establishing the high bar that plaintiffs face in establishing general jurisdiction based on systematic contacts with the forum state:

> "A review of case law demonstrates that continuous and systematic contacts is a fairly high standard. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984) (no jurisdiction over a foreign corporation that sent officer to forum for one negotiating session, accepted

checks drawn on a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained); *Cubbage v. Merchant,* 744 F.2d 665, 667-68 (9th Cir.1984) (finding no jurisdiction over defendant doctors despite a significant numbers of patients in the forum, use of the forum's state medical insurance system, and a telephone directory listing including the defendants that reached the forum), *cert. denied,* 470 U.S. 1005 (1985). Notably, the Sixth Circuit Court of Appeals rejected a claim that general jurisdiction existed based upon the following contacts between the defendant and the forum state, Ohio: 1) the existence of a prior reinsurance agreement between the defendant and an Ohio company; 2) a prior reinsurance agreement between the parties; and 3) the defendant's participation in a property pool. *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.,* 91 F.3d 790, 793-94 (6th Cir.1996). The appellate court concluded that such contacts failed to establish the kind of 'continuous and systematic' conduct required to support general personal jurisdiction over the defendant. *Id.* (citing *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1045-46 (2d Cir.1991) (holding that thirteen business trips of short duration over the course of eighteen months did not constitute 'continuous and systematic' solicitation of business in the state of New York)). Additional facts noted by the court and found insignificant as a basis for general jurisdiction included the length of the relationship with the forum state and that the defendant did not direct its activities toward the forum state in order to enter a contract. *See also, Mancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000) (noting that '[t]he standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be of the sort that approximates physical presence') (quotations and citations omitted)"

The Defendants Beachmold Mexico, PIO, and iP3 NA do not have any physical presence or substantial contacts in the state of Michigan; they are not registered to do business nor have they conducted business in Michigan; they have never directly entered into a contract with or transacted with a Michigan resident; they have never owned or leased property in the state of Michigan; they have never retained an office or opened a bank account in Michigan; and they have never advertised or sought out business in Michigan (*Id.*). This demonstrates that Defendants did not maintain substantial contacts that were so continuous and systematic as to render them "at home" within the state of Michigan.

Nonetheless, Plaintiff relies on three exhibits that purport to show sufficient contacts for general jurisdiction: (1) a management agreement between Beach Mold, Inc. (the Indiana corporation) and Beachmold Mexico, *Plaintiff's Response* [Doc. #118], Exhibit T; (2) a series of emails relating to a previous, unrelated transaction involving Plaintiff, Beach Mold, Inc., and Beachmold Mexico, *Plaintiff's Response*, Exhibit U; and (3) a sales agreement appended to a capital asset purchase agreement between Beach Mold, Inc. and PIH (a/k/a iP3) regarding the potentiality of PIH producing parts for customers of Beach Mold, Inc. *Plaintiff's Response*, Exhibit 7.1.6C to Exhibit L. However, these exhibits fall far short of what is required.

First, the management agreement between Beachmold Mexico (a Mexican corporation) and Beach Mold, Inc. (an Indiana corporation), does not mention the State of Michigan or any Michigan corporation, including Plaintiff. Indeed, it states that it is to be "construed in accordance with Mexican laws." Beachmold Mexico finds no home in Michigan based on this exhibit.

The emails between Plaintiff, Beach Mold, Inc. and Beachmold Mexico appear to involve an unrelated Ford Motor Company program well before the sale of Beachmold Mexico occurred. Assuming that these emails in fact support such a transaction, it is still insufficient to show *continuous* and systematic contacts with Michigan. *See* e.g., the cases cited in *Jones v. Blige*, including *Helicopteros Nacionales de Colombia*, where the Supreme Court found that there was no jurisdiction over a foreign corporation that sent officer to forum state for one negotiating session, accepted checks drawn on a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained. In the present case, the level of contact between these Defendants and Michigan is even more attenuated.

Finally, the sales agreement between Beach Mold, Inc. and PIH/iP3 is an extraordinarily thin reed on which to support a claim of substantial contacts between these Defendants and the State of Michigan. The agreement does not firmly establish any business in Michigan. Rather, ¶ 1 of the agreement merely states that Beach Mold, Inc. "will provide Mexico Company of list of *potential customers* similar to Exhibit B...." The mere possibility, or hope that Beach Mold, Inc. will successfully solicit customers for PIH's products in Michigan cannot possibly constitute an *actual* contact, much less continuous and systematic contacts.[3] *See Zellerino v. Roosen*, 118 F. Supp. 3d 946, 953 (E.D. Mich. 2015)("Personal jurisdiction cannot be based on the intent to make contact with the forum some time in the future. The Court must evaluate personal jurisdiction based on the contacts that the defendant has already made. Hypothetical contacts do not suffice.").

In short, the contacts that Beachmold Mexico, PIO, and iP3 have with Michigan range from tenuous to non-existent. The Court cannot assert general personal jurisdiction over these entities.

### B. Specific Jurisdiction

Specific jurisdiction "allows a Plaintiff to sue a Defendant only on claims that arise out of the defendant's activities in the forum state." *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 Fed.Appx. 406, 408 (6th Cir.), *cert. denied sub nom. Maxitrate Tratamento Termico E Controles v. Allianz Seguros S.A.*, 136 S. Ct. 336, 193 L.Ed. 2d 231 (2015), citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). A

---

[3] Defendants note that none of the three companies in the exhibit to Exhibit L, which Plaintiff claims have Michigan-based customers are Michigan corporations, and all have plants or subsidiaries in Mexico. *Defendants' Response* [Doc. #129], Pg. ID 2792; Exhibits A, B, and C.

Defendant must have "minimum contacts" with the state in order to be subject to specific jurisdiction in a certain state. *Id.*, citing *Walden v. Fiore*, 571 U.S. 277, 282-83 (2014).

Michigan's long-arm statute, M.C.L. § 600.715, provides that at least one of five relationships must be established between a foreign corporation and the state:

> (1) The transaction of any business within the state; (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; (3) The ownership, use, or possession of any real or tangible personal property situated within the state; (4) Contracting to insure any person, property, or risk located within this state at the time of contracting; [or] (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.  MCL 600.715

Plaintiff argues that there is specific jurisdiction under (1) and (2) of the MCL 600.715 due to the fraudulent transfer of its assets causing a tort in Michigan and the transacting of business between Beachmold Mexico and Grammer.  These arguments fail in light of the Supreme Court's decision in *Walden v. Fiore*.

In *Walden*, the Supreme Court addressed the "minimum contacts" necessary to support a claim of specific jurisdiction, noting that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. 571 U.S. at 283.  The Court described two factors as relevant to that inquiry.  First, "the relationship must arise out of contacts that the "defendant himself" creates with the forum State." *Id*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475.  In other words, the *plaintiff's* contacts with the forum state are insufficient to establish personal jurisdiction. *Id*., citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 417.  Second, the "'minimum contacts'" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 285.  The Court stated, "But the plaintiff cannot be the only link

between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*.

Defendants Beachmold Mexico, iP3 NA, and IPO have not purposely directed any action towards or directly engaged in any activities with the state of Michigan. Beachmold Mexico is a Mexican company that deals directly with Beach Mold, Inc. (the Indiana corporation), not with Grammer (Tr.1303) . There is no record of a contract or agreement directly between Beachmold Mexico and Plaintiff.[4]  But even if there were some fortuitous course of dealing between Plaintiff and these Defendants, that is insufficient, under *Walden*, to constitute the "minimum contacts" necessary for specific jurisdiction.[5]

Plaintiff's contention that specific jurisdiction can be based on it's allegation that Defendants actions resulted in a tort (fraudulent transfer of assets) whose effects were felt in Michigan also fails in light of *Walden*. There, the Supreme Court held that the "same principles apply when intentional torts are involved. In that context, it is likewise insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff." *Id.*, 571 U.S. at 286. The Court thus rejected the theory

---

[4] The alleged assignment of the Grammer contract from Beach Mold, Inc. to Beachmold Mexico is insufficient to find that Beachmold Mexico is subject to personal jurisdiction of Michigan courts (Tr. 2351-52). *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773 (7th Cir. Ind. 2003), where the plaintiff negotiated and entered into a contract with a company in Indiana, after which the Indiana company assigned the contract to a French corporation. The Court held that the assignment of the contract was insufficient to allow specific jurisdiction over the French corporation because of its lack of direct contacts with Indiana.

[5] Again, PIH's/ Beachmold Mexico's expression of an intent or possibility of someday soliciting customers in Michigan is insufficient. *Zellerino v. Roosen*.

that personal jurisdiction could be based on the *effects* of a defendant's conduct that occur in the forum state:

> "As previously noted, *Calder* [*Calder v. Jones*, 465 U.S. 783 (1984)] made clear that mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 289-90.

Because this Court lacks personal jurisdiction over Defendants Beachmold Mexico, PIO, and iP3, their motion to dismiss under Rule 12(b)(2) should be granted.

### IV.   CONCLUSION

I recommend that Defendants' motion to dismiss [Doc. #102] be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Dated: March 14, 2019

---

**CERTIFICATE OF SERVICE**

I hereby certify on March 14, 2019 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on March 14, 2019.

                                              s/Carolyn M. Ciesla
                                              Case Manager for the
                                              Honorable R. Steven Whalen