UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRAMMER INDUSTRIES, INC.,

               Plaintiff,                    Case No. 15-cv-12694

v.                                       Paul D. Borman
                                       United States District Judge

BEACH MOLD AND TOOL, INC.       R. Steven Whalen
*et al.*,                               United States Magistrate Judge

               Defendants.
_____/

OPINION AND ORDER
(1) ADOPTING MAGISTRATE JUDGE WHALEN'S AUGUST 26, 2018
REPORT AND RECOMMENDATION (ECF NO. 158);
(2) OVERRULING DEFENDANT BEACH MOLD & TOOL, INC.'S
OBJECTIONS (ECF NO. 161);
3) OVERRULING PLAINTIFF GRAMMER INDUSTRIES, INC.'S
OBJECTIONS (ECF NO. 160); AND
(3) GRANTING IN PART AND DENYING IN PART GRAMMER'S MOTION
FOR PARTIAL SUMMARY JUDGMENT(ECF NO. 114)

On August 26, 2018, Magistrate Judge R. Steven Whalen issued a Report and

Recommendation (ECF No. 158) to grant in part and deny in part Plaintiff Grammer

Industries, Inc.'s ("Grammer") Motion for Partial Summary Judgment (ECF No. 114).

Before the Court are Defendant Beach Mold & Tool, Inc. ("Beach Mold") and

Grammer's objections to the Magistrate Judge's August 26, 2018 Report and

Recommendation. (ECF No. 160, Pl.'s Objections, ECF No. 161, Def.'s Objections.)

The Court, having conducted *de novo* review under 28 U .S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) of those portions of the Report and Recommendation to which specific and timely objections have been filed, OVERRULES the objections, ADOPTS the Report and Recommendation and GRANTS IN PART AND DENIES IN PART Grammer's Motion for Partial Summary Judgment.

## I.   BACKGROUND

The background facts of this litigation are set forth in detail in the Magistrate Judge's Report and Recommendation.  As relevant to the Court's resolution of the parties' objections, Grammer supplies automotive assemblies to original equipment manufacturers and engaged Beach Mold, a tooling manufacturer and parts producer, to make certain tools and to take possession of other tools that were to be used by Grammer for a potential contract to produce parts for Fiat Chrysler Automotive LLC ("FCA").  Beach Mold was to build the specified tooling and to build parts from those tools at a future date.  Beach Mold was to make the majority of the tools and a smaller aspect of the tooling, the "Top Hat Tool,"  was  being built by Advance Mold Incorporated ("Advance Mold") and was delivered to Beach Mold to be made a part of the FCA tooling necessary for Grammer's FCA program.  (ECF No. 114, Pl.'s Mot. Partial Summ. J. Ex. A, PgID 2079-84; Ex. R, Jan. 4, 2017 Affidavit of James Beal ¶¶ 3-4.)  Under the parties' agreement, Beach Mold made its tooling at its facility in

Albany, Indiana and then shipped its tooling and the Top Hat Tool of which it had taken delivery (collectively "the Tooling") to Beach Mold's facility in Queretaro, Mexico ("Beachmold Mexico"), where the parts for Grammer's FCA program were to be produced. Beach Mold issued a price quotation stating that "pricing [is] based on parts being manufactured at *our* Queretaro, Mexico facility," and the quote indicated only an address in Queretaro, Mexico. (Pl.'s Mot. Ex. B, PgID 2086; Ex. R. Beal Aff. ¶ 8.) (Emphasis added.) Under the relevant purchase orders, Beach Mold was responsible for the shipment and delivery of the Tooling from new Albany to Queretaro, Mexico and Beach Mold "remain[ed] AAR responsible for the components and tooling through the life of the project." (Pl.'s Mot. Ex. A, PgID 2079; Ex. R., Beal Aff. ¶ 10.) Nowhere in these documents did Beach Mold identify the Beachmold Mexico facility as a separate legal entity. (Beal Aff. ¶ 7.)

Beach Mold's account manager, Tammy Rickard, testified regarding the content of the Beach Mold website which states that: "Beach Mold and Tool has brought total solutions capability south of the border with its newest facility in Queretaro, Mexico." (Pl.'s Mot. Ex. D, June 29, 2016 Deposition of Tammy Rickard 18:18-25.) Ms. Rickard explained that she understood that the Beachmold Mexico facility was a separate legal entity from Beach Mold and she recalled generally discussing that relationship with some customers but not with Grammer. She could not recall specific

individuals at other customers with whom she had such conversations and she was unaware of any writings of any nature that explained the separate legal status of Beach Mold and Beachmold Mexico. (Rickard Dep. 19:20-23:6, PgID 2100-2101.) As Magistrate Judge Whalen correctly concluded: "There has been no evidence produced showing that the corporate status of Beachmold Mexico was listed anywhere, and certainly not on Beach Mold's website, which referred to "*its* newest facility in Queretaro, Mexico." (Report 5, n. 3, PgID 3541.) Ms. Rickard explained that the acronym "AAR," as used in the purchase orders indicating that Beach Mold "remains AAR responsible for the components and tooling for the life of the project," means that Beach Mold was responsible to make a quality part from the Tooling for the life of the program. (Rickard Dep. 33:2-8, PgID 2103.)

Sometime in 2012, with no provision of notice to Grammer, Beachmold Mexico was sold to a third party, American Industrial Acquisition Corporation d/b/a iP3 ("iP3"). (Pl.'s Mot. Ex. F, Beach Mold Answers to Interrogatories 2, PgID 2121.) Subsequently, Grammer's FCA program was put on hold and FCA asked Grammer to produce evidence of possession of the Tooling. Grammer then contacted Beach Mold in Albany, Indiana, and requested return of the Tooling. Beach Mold responded that it had no ability to return the Tooling. Beach Mold explained: "There had been a relationship between Beach Mold & Tool and Beachmold Mexico prior to the sale

in 2012. But after the ownership of Beachmold Mexico was sold to iP3, Beach Mold & Tool had no ability to recover the Tooling for Grammer." (*Id*.) Unable to provide the Tooling to FCA, or even to provide proof of possession, Grammer was forced to reimburse FCA for the Tooling. The value of the Tooling was $136,560.00. (Pl.'s Mot. Ex. R, Beal Aff. ¶ 15.)

"Prior to Grammer's request for the Tooling, no representative of Beach Mold advised Grammer that Beach Mold's Mexico facility had not been previously owned and controlled by Beach Mold." (Beal Aff. ¶ 14.) In June, 2015, Grammer filed suit against Beach Mold in Oakland County Circuit Court for breach of contract and conversion. The action was removed to this Court on July 31, 2015. Since removal parties have been added and cross claims asserted. Grammer has amended its complaint three times. (ECF Nos. 17, 41, 68) The most recent and operative Complaint is the Third Amended Complaint, asserting against Beach Mold claims for breach of contract (Count I), and conversion (Count II) ("the TAC"). The TAC also asserts claims of breach of contract and conversion against Beachmold Mexico (Count III) and asserts claims of breach of fiduciary duty against iP3 and other third parties (Count IV).

On January 18, 2017, Grammer filed a motion for partial summary judgment against Beach Mold, which this Court referred to Magistrate Judge Whalen, along

with all pretrial matters, on January 31, 2017. (ECF No. 128, Order Referring Pretrial Matters to Magistrate Judge R. Steven Whalen, specifically including ECF No. 114.) On August 8, 2018, Magistrate Judge Whalen issued his Report and Recommendation on Grammer's Motion for Partial Summary Judgment. (ECF No. 158.) Presently before this Court for resolution are both parties' objections to the Magistrate Judge's Report and Recommendation.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed a "specific written objection" in a timely manner. *Lyons v. Comm'r Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (quotation marks and citation omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp.

2d 743, 747 (E.D. Mich. 2004). "'[B]are disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R & R.'" *Arroyo v. Comm'r of Soc. Sec.*, No. 14-cv-14358, 2016 WL 424939, at *3 (E.D. Mich. Feb. 4, 2016) (quoting *Depweg v. Comm'r of Soc. Sec.*, No. 14-11705, 2015 WL 5014361, at *1 (E.D. Mich. Aug. 24, 2015) (citing *Howard v. Secretary of Health & Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)).

In evaluating the merits of the underlying summary judgment motion, the Court must view the facts in the light most favorable to the non-moving party (here Beach Mold) and may grant summary judgment to the Plaintiff only if no rationale trier of fact could find for the Defendant on those facts:

> Because [Grammer] seeks summary judgment on claims for which it has the burden of persuasion, [Grammer's] showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for [it]." See *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487–88 (1984)). In making this determination, the Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to [Beach Mold].

*Tapper's Fine Jewelry, Inc. v. Chubb Nat'l Ins. Co.*, 14-cv-13280, 2015 WL 9268750, at *4 (E.D. Mich. Dec. 21, 2015).

## III.   ANALYSIS

### A.   Beach Mold's Objection

Defendant's "objection," which reads more like a summary judgment brief than an objection to a Report and Recommendation, is largely a summary of the Magistrate Judge's Report and Recommendation, followed by a rehashing of Plaintiff's summary judgment arguments, with which Defendant disagrees. The "objection" does not "pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira*, 806 F.2d at 637. Beach Mold does not clearly articulate specific objections directed to particular portions of the Magistrate Judge's Report and Recommendation, but as best the Court can determine Beach Mold disagrees with (1) the Magistrate Judge's determination that portions of the Declaration of James Mahoney were not based on personal knowledge, and (2) the Magistrate Judge's conclusion that Beach Mold should be equitably estopped from presenting facts to demonstrate that Beachmold Mexico was a legal entity separate from Beach Mold or from arguing that Grammer was or should have been aware of such facts. Beach Mold argues that summary judgment in favor of Grammer on its contract and conversion claims was error because "sworn evidence of record," specifically the Declaration of James Mahoney, creates genuine issues of material fact regarding Grammer's knowledge of the legal separateness of Beach Mold and Beachmold Mexico.

The Court disagrees with Beach Mold and OVERRULES Beach Mold's objections, finding no error in Magistrate Judge Whalen's conclusions that (1) the Mahoney Declaration is not competent summary judgment evidence for the reasons proffered as it is not based on the declarant's personal knowledge as to the issues presented in Grammer's motion, and (2) on the facts presented on this summary judgment record Beach Mold must be estopped from denying that Beach Mold and Beachmold Mexico were a single legal entity because "any customer [] would reasonably be led to conclude that the Mexican production facility was a wholly-owned division of Beach Mold & Tool, Inc. A neon sign would not have made it plainer." (Report 12, PgID 3548.)

Beach Mold attaches to its objections the Declaration of James Mahoney, a document that was actually filed in support of Beach Mold's motion to dismiss (ECF No. 102), a motion that is not addressed by the Report and Recommendation currently before the Court. (Def.'s Objs. Ex. C, Jan. 9, 2017 Declaration of James J. Mahoney.) Beach Mold relies on the Mahoney Declaration to support its argument that the Magistrate Judge erred in finding no genuine issue of material fact that Grammer was unaware (until sometime in 2015) that Beachmold Mexico was not owned and controlled by Beach Mold. Beach Mold argues that "sworn evidence of record [] establishes that Grammer <u>was</u> aware that its tooling in Mexico was at a facility owned

and operated by someone other than Beach Mold & Tool" and states that Mr. Mahoney's Declaration supplies this sworn evidence of record. (Def.'s Objs. 7-8, PgID 3575-76) (emphasis in original).

The Mahoney Declaration is not competent summary judgment evidence on this point:

> "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). "It must be remembered that when the moving party presents admissible evidence justifying a summary judgment if uncontradicted, the opposing party has the duty to show the existence of a genuine issue of material fact." 10B Wright, Miller & Kane, Federal Practice and Procedure § 2738, at 345 (3d ed.1998) (referencing Rule 56(e), the predecessor of Rule 56(c)(4)). As part of this duty, Federal Rule of Civil Procedure 56(c)(4) "limits the matter to be properly included in an affidavit to facts, and the facts introduced must be alleged on personal knowledge. Thus, . . . statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion." *Id.* at 345–46, 350–54 (footnotes omitted).

*Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015).

First of all, it is undisputed that during the time period that Beach Mold asserts Grammer became aware of these facts, i.e. sometime in 2012-2013, Mahoney either did not have any relationship with Beachmold Mexico or was only functioning as a commercial consultant. Mr. Mahoney testified in his deposition that from August, 2013 until January, 2014 (when Mr. Mahoney replaced Alex MacDonald as President

of Beachmold Mexico), Mr. Mahoney was an unpaid informal consultant to Beachmold Mexico, giving advice on commercial matters from time to time. (ECF No. 150-4, July 31, 2017 Deposition of James J. Mahoney, 8:20-9:19, PgID 3468-69.) Prior to August, 2013, Mr. Mahoney had no formal or informal relationship to Beachmold Mexico. Mr. Mahoney admitted in his deposition that the statements made in paragraph three (3) of his declaration were "secondhand" and that he "did not have first hand knowledge of the reason [Grammer] and [Beachmold Mexico] ceased their commercial relations." (*Id*. at 48:2-12, PgID 3478.) And when asked if he knew who at Beachmold Mexico was responsible for the Grammer FCA program, Mahoney responded: "That occurred before my arrival, so anything I would know about it would be second hand." (*Id*. 12:10-11, PgID 3469.) Beach Mold concedes that portions of the Mahoney Declaration were in fact not based on Mahoney's personal knowledge and have backed away from Mr. Mahoney's testimony that the Tooling at issue in this action was returned to Grammer. (ECF No. 161, Def.'s Objs. 4 n. 2, PgID 3572; ECF No. 164, Def.'s Reply to Objs. 3, PgID 3654.) It is undisputed that the tooling that Mr. Mahoney refers to in his Declaration that was allegedly removed by Grammer was not the tooling that is at issue in this action and that the Tooling for the FCA program was in fact never returned to Grammer. Yet Beach Mold insists that the Court should not disregard the balance of Mr. Mahoney's Declaration because Mr.

Mahoney indicated that he "relied upon his staff to advise him about ordinary course of business matters including Grammer." (Def.'s Objs. 9, PgID 3577.) In urging the Court to rely on, and find genuine issues of material fact created by, the Mahoney Declaration, Beach Mold cites cases that stand for the proposition that personal knowledge can be based on a review of regularly kept business records. *See Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 305 (6th Cir. 2016) (recognizing that an affidavit that might not be admissible at trial may suffice at the summary judgment stage if the testimony in the affidavit is based on "records kept in the regular course of [] business"); and *Daniel v. West Asset Management, Inc.*, No. 11-cv-10034, 2011 WL 5142980, at *9 (E.D. Mich. Oct. 28, 2011) ("Personal knowledge . . . is not strictly limited to activities in which the declarant has personally participated . . . . [P]ersonal knowledge can come from review of the contents of files and records." (Citing *Washington Cent. R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993)) (ellipsis in original). But Mr. Mahoney does not purport to base his knowledge on a review of business records at all – he apparently relied on "conversations" with his "staff" to advise him of many of the matters to which he speaks in his Declaration. In fact Mr. Mahoney testified at his deposition that anything he knew of events that occurred before his arrival in January, 2014, "would be second hand." (*Id*. 12:10-11, PgID 3469.) And it is undisputed that as to an important aspect

of his Declaration, the reported information he received "from staff" was inaccurate (or at least interpreted by Mr. Mahoney inaccurately). Mr. Mahoney was not noticed or offered by Beach Mold as a 30(b)(6) deponent with knowledge of corporate matters – in fact his deposition was expressly "limited to matters raised in the declaration signed by Mr. Mahoney that was attached to [Beach Mold's motion to dismiss – ECF No. 102]." (Mahoney Dep. 6:16-24, PgID 3468.) Beach Mold repeatedly asserts that the "sworn Mahoney declaration" is evidence creating a genuine issue of material fact that Grammer was aware that Beach Mold and Beachmold Mexico were separate entities. But Beach Mold fails to identify the specific statements of the Mahoney Declaration that have adequate foundational support that either state that fact or support that inference. The Court is not weighing credibility or deciding factual issues, as Beach Mold asserts, in declining to consider the Mahoney Declaration – it is finding a fundamental lack of foundational support for the statements from the Declaration on which Beach Mold seeks to rely. This is the function of the Court, not the trier of fact. The Magistrate Judge did not err in concluding that the Mahoney Declaration contained speculative statements regarding contacts between Grammer and Beachmold Mexico not based on personal knowledge that could not be relied

upon to create a genuine issue of material fact for trial.[1]

The Court concludes that the Magistrate Judge correctly disregarded the Mahoney affidavit and appropriately relied on the testimony of James Beal, the senior buyer for Grammer during the events that are the subject of this action, that: "Prior to Grammer's request for the Tooling, no representative of Beach Mold advised Grammer that Beach Mold's Mexico Facility had not been previously owned and controlled by Beach Mold." (ECF No. 114-18, Jan. 4, 2017 Affidavit of James Beal ¶ 14.) As the Magistrate Judge observed, this testimony stands unrebutted. Beach Mold has not offered a single witness who has testified that Beach Mold informed Grammer at any time prior to 2015 that Beach Mold did not own or control Beachmold Mexico, and therefore had no control over the disposition of the Tooling after it left Beach Mold in Albany, Indiana. Nor has Beach Mold offered a single

_____

[1] Beach Mold also suggests that an inference can be drawn that Grammer was aware of the separate ownership of Beachmold Mexico in 2013 from the fact that Grammer allegedly did not contact Beach Mold in Albany in 2013 to "sever its relationship" and obtain return of the Ford tools (tooling unrelated to the Tooling at issue in this case). (Def.'s Objs. 11, PgID 3579.) Yet Beach Mold asserts that in 2015, when Grammer sought return of the FCA Tooling that is the subject of this action, "Grammer contacted Beach Mold & Tool in New Albany, Indiana requesting the tooling." (Def.'s Objs. 5, PgID 3572.) Beach Mold further states that it "referred Grammer to the new owners of the former Beahmold Mexico facility, but no one at that facility could account for the tooling." (*Id.*) Grammer's contacting Beach Mold in 2015 then surely supports an inference that Grammer was *not aware* of the separate ownership and still believed Beach Mold to be responsible for the Tooling and capable of returning it at Grammer's request.

document that conveys this information to Grammer.  In fact, *all* of the evidence suggests just the opposite – that Beach Mold and Beachmold Mexico were commonly owned and that Beach Mold would continue to be responsible for the Tooling (including the Top Hat Tool which became a part of the Tooling when Beach Mold took possession of the Top Hat Tool and later delivered it along with its own tooling to Beachmold Mexico) through the life of the program.  Even viewing the facts in the light most favorable to Beach Mold, no reasonable juror could conclude based on the evidence presented that Grammer was aware, or at anytime prior to 2015 became aware, that Beach Mold's responsibility for the Tooling ended when the Tooling left Beach Mold's Albany, Indiana facility for delivery to Beach Mold's Mexico facility. Beach Mold was required to respond to Grammer's motion for summary judgment with "evidence of evidentiary quality" creating genuine issues of fact for trial. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).  It did not do so.

The facts on this summary judgment record, even when viewed in the light most favorable to Beach Mold, compel the conclusion that Beach Mold induced Grammer to believe that Beachmold Mexico was owned by Beach Mold throughout the relevant period of time and that Grammer was unaware of any facts that would suggest a separate corporate existence, that Grammer relied on this belief and would be prejudiced if Beach Mold were allowed to deny these facts now.  The Magistrate

Judge did not err in concluding that "Beach Mold should be equitably estopped from presenting facts showing that Beachmold Mexico was a separate entity, or from presenting legal arguments flowing from those facts." (Report 12-13, PgID 3548-49.)

Each of Beach Mold's remaining "arguments" (which are not specific objections pinpointing the Magistrate Judge's error) flows from Beach Mold's assertion that Beach Mold cannot be equitably estopped from arguing that Beach Mold and Beachmold Mexico are separate corporate entities and that Grammer was aware of this "separateness." Beach Mold continues to assert that "Beach Mold & Tool in Indiana" took no action with respect to the Tooling that was inconsistent with Grammer's interests. This ignores the Court's ruling that Beach Mold is estopped from arguing that it is a separate corporate entity from Beachmold Mexico – whom Beach Mold concedes transferred all of the assets of Beachmold Mexico to a third party (iP3) and now cannot account for the Tooling. Beach Mold is estopped to deny that it and Beachmold Mexico are a single legal entity and the Magistrate Judge did not err in concluding that Beach Mold both breached the bailment contract with Grammer and converted the Tooling (including the Top Hat Tool over which Beach Mold assumed possession and control and delivered to its Beachmold Mexico facility), over which Beach Mold had assumed responsibility for the life of the FCA program but failed preserve and return to Grammer. The Magistrate Judge correctly

concluded that Grammer is entitled to summary judgment on its breach of contract and common law conversion claims.

### B.    Grammer's Objection

Magistrate Judge Whalen recommended that the Court deny Grammer's motion for summary judgment on a separate statutory conversion claim, both because that claim had not been pleaded in Plaintiff's complaints and because Plaintiff failed to meet the elements of a statutory conversion claim. Statutory conversion in Michigan covers a more narrow swath of conduct than the common law tort of conversion, as "someone alleging conversion to the defendant's 'own use' under [M.C.L. § 600.2919a(1)(a)] must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose.'" *Aroma Wines & Equipment, Inc. v. Columbian Distribution Services, Inc.*, 497 Mich. 337, 359 (2015)) (alterations in original). The key additional element in a statutory conversion claim, which allows for the recovery of treble damages and attorneys' fees, is that the converter must use the property converted "for a purpose personal to the converter," but that purpose need have no relation to the intended use of the thing converted.

Grammer filed an objection to Magistrate Judge Whalen's recommendation that Grammer be denied summary judgment on its statutory conversion claim, principally

relying on *Aroma Wines* and arguing that the Magistrate Judge erred in failing to apply that decision to find statutory conversion here and also erred in dismissing the claim rather than finding that genuine issues of material fact precluded summary judgment in Grammer's favor on the statutory conversion claim. (ECF No. 160, Pl.'s Objs. 3-6, PgID 3563-65.) Grammer appears to interpret the Magistrate Judge's Report and Recommendation as recommending that the Court dismiss its statutory conversion claim as a matter of law. (Pl.'s Objs. 5, PgID 3565.) While the Court *does* have the discretion to grant summary judgment to the non-moving party, i.e. to grant summary judgment in favor of Beach Mold despite the absence of a motion before it by Beach Mold seeking such relief, *see* Fed. R. Civ. P. 56(f)(1), the Court does not interpret Magistrate Judge Whalen's Report as having done so here. True the Magistrate Judge does state affirmatively that "Plaintiff in this case is not entitled to triple damages, costs, and attorney fees as provided for in the statute." (Report 17, PgID 3553.) However, the Magistrate Judge concluded that "summary judgment be DENIED as to any claim for statutory conversion," (Report 18, PGID 3554) and, as this Court interprets the Magistrate Judge's ruling, he did not recommend that judgment as a matter of law be entered in favor of Beach Mold on Grammer's statutory conversion claim at this time.

Turning to the merits of Grammer's objection, Grammer argues that Magistrate Judge Whalen erred in relying on *Graham Medical Technologies, LLC v. Akron Medical, Inc.*, No. 09-cv-14905, 2011 WL 1899230 (E.D. Mich. May 19, 2011) in concluding that in this case, as in *Graham*, Plaintiff has not presented any evidence that the "converter" (Beach Mold) stole or embezzled the Tooling, or converted it to its own use and recommending that summary judgment to Grammer be denied. (Report 17, PgID 3553.) In *Graham*, the plaintiff, a developer and manufacturer of certain medical devices, entered into an agreement with the defendant under which the defendant would sell and distribute the plaintiff's devices. *Id*. at *1. The plaintiff provided certain of its devices to the defendant to sell, along with demonstration models and training manuals. *Id*. At some point the plaintiff implemented a new inventory management system and requested that defendant return the devices and demonstration models that had been provided by the plaintiff. *Id*. According to the plaintiff, the defendant returned some but not all of the inventory and plaintiff filed suit against the defendant for breach of contract, claim and delivery, and conversion. *Id*. The district court granted the plaintiff summary judgment on the breach of contract, claim and delivery, and common law conversion claims. *Id*. at *2-7. The court denied plaintiff's motion for summary judgment on the statutory conversion claim, declining to award plaintiff "treble damages at this stage of the proceedings,"

because plaintiff presented no evidence to suggest *what* had happened to the admittedly missing inventory and therefore could not demonstrate at the summary judgment stage that the inventory was "stolen, embezzled or converted to Defendant's own use for purposes of statutory conversion." *Id.* at *7. While plaintiff did establish that defendant failed to return the inventory to the defendant – an act "sufficient to prove common law conversion" – the absence of evidence demonstrating the whereabouts of the inventory precluded a finding of summary judgment in favor of the plaintiff. *Id.* Magistrate Judge Whalen concluded that Grammer's inability to produce any definitive evidence concerning the whereabouts of the Tooling similarly precluded a finding of summary judgment in Grammer's favor here.

Grammer asserts in its objection that Magistrate Judge Whalen erred in applying *Graham* and argues that the facts of this case are "more akin" to the property storage arrangement in *Aroma Wines*. In *Aroma Wines*, the jury was presented with evidence that the defendant, who entered into an agreement with the plaintiff to store some of the plaintiff's wine in defendant's temperature controlled facility, at some point physically moved the wine from the temperature controlled facility to an uncontrolled environment. The issue was not whether the defendant had moved the wine, as defendant admitted to moving the wine to a different facility, and there was no mystery as to its whereabouts. Rather, the court grappled with the issue of whether

this amounted to statutory conversion where the defendant claimed that it moved the wine in order to complete renovations to the temperature controlled facility and did not therefore use the wine for its "intended or common purpose," presumably drinking it or selling it. 497 Mich. at 358. The Michigan Supreme Court concluded that the Michigan legislature did not intend to limit the definition of "use" in the statutory conversion statute to uses that were related to "the intended purpose of the converted property," in that case the drinking or perhaps selling of the wine. *Id*. at 358. The court explained:

> Columbian proffered, and the circuit court adopted, a narrow definition of "use" focused on the intended purpose of the converted property, such as the definition of the word as "habitual or customary usage" quoted above. Under this definition, to convert Aroma's wine to Columbian's "own use" means that "one would have to drink it or perhaps sell it."

> In reversing the circuit court's decision, the Court of Appeals held that "the definition of 'use' encompasses a much broader meaning" than the circuit court's definition allows. Under the Court of Appeals' preferred definition, "use" "requires only that a person 'employ for some purpose....'" As a result, converting to the other person's "own use" means merely that a defendant "employ[s]" another person's property for any purpose, as long as it is "to [the defendant's] own purposes."

497 Mich. at 358 (citations and footnotes omitted) (alterations in original). Accordingly, under *Aroma Wines*, "someone alleging conversion to the defendant's 'own use' under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that

purpose is not the object's ordinarily intended purpose." *Id*. at 359. Thus, the court agreed with the court of appeals that, "the act moving plaintiff's wine contrary to the contract in order to undertake an expansion project to benefit itself" was "an act of employing the wine to [defendant's] own purposes constituting 'use' of the wine." *Id.* at 360. Again directly embracing the court of appeals' reasoning, the Michigan Supreme Court concluded that "[i]f a jury believed the evidence showing that defendant moved plaintiff's wine for its own purpose . . . it could have determined that defendant converted the wine to its own use." *Id*. Here, Grammer argues, "Beach Mold improperly sold and transferred the property for its own use" in connection with the sale of the Mexico operation," and Beach Mold's "selling Grammer's property to a third party is for one's own use when applying *Aroma Wines*." (Pl.'s Objs. 4, PgID 3564.)

The Court agrees with the Magistrate Judge that Grammer is not entitled to summary judgment on its statutory conversion claim because genuine issues of material fact remain for trial regarding whether Beach Mold converted the Tooling "for some purpose personal to its interests." *Aroma*, 497 Mich. at 359. Viewing the facts in the light most favorable to Beach Mold, Beach Mold took possession of the Tooling at its facility in Indiana and transferred the Tooling to the Beachmold Mexico facility. As Magistrate Judge Whalen concluded, and as this Court agreed, Beach

Mold is estopped from denying that it retained possession of and responsibility for the Tooling once it was transferred to the Beachmold Mexico facility. And Beach Mold admits in its Answer to Plaintiff's Third Amended Complaint and in Answers to Interrogatories that the all of the assets of Beachmold Mexico were sold to a third party (iP3) and Beach Mold admits that it cannot now locate and return the Tooling. (ECF No. 80, ¶¶ 28, 32.) As Magistrate Judge Whalen correctly concluded, these facts are sufficient to establish common law conversion here. But because neither party appears to have knowledge of the whereabouts of the Tooling at this point, and because there is no evidence in this summary judgment record establishing under what circumstances the Tooling disappeared, Grammer has failed to establish that there is no genuine issue of material fact that Beach Mold converted the Tooling to its own purpose, i.e. to a purpose personal to Beach Mold's interests, and that no reasonable juror could conclude otherwise.

The Court concludes that Magistrate Judge Whalen did not err in concluding that Grammer is not entitled to summary judgment on its statutory conversion claim and therefore OVERRULES Grammer's objection. Accordingly the statutory conversion claim lives on and Grammer is not entitled to the damages otherwise

available on that statutory claim at this time.[2]

## IV.   CONCLUSION

For the foregoing reasons the Court OVERRULES both Plaintiff's and Defendant's Objections, ADOPTS the Report and Recommendation, and GRANTS IN PART AND DENIES IN PART Grammer's motion for summary judgment. Grammer is GRANTED summary judgment on its breach of contract claim and its common law conversion claim. Summary judgment is DENIED on Grammer's statutory conversion claim.

Grammer is awarded damages of $136,560.00.

---

[2] Beach Mold also argues in its Response to Plaintiff's objections that Grammer did not "cite" the statutory conversion statute in its claims against Beach Mold in any of its four complaints filed in this action. This is false. Plaintiff's First Amended Complaint expressly captioned its conversion claim "Count II - Common Law and Statutory Conversion (against Beach [Mold] and iP3) and further cited to the Michigan statute, MCL 600.2919a, and alleged that both Defendants had converted the Tooling "for their own use." (ECF No. 17, ¶¶ 18-24.)  In both the Second and Third Amended Complaints, although the statutory cite is not repeated, the allegation that Beach Mold converted the Tooling "to its own use," an element unique to the statutory conversion claim, is repeated in both.  (ECF No. 41, Second Amended Complaint ¶ 43; ECF No. 68, Third Amended Complaint ¶ 51.)  As Beach Mold notes in its Response to Plaintiff's objections, the phrase "for their own use . . . is important and the words matter."  (Def.'s Resp. 4, PgID 3634.)  Beach Mold cannot credibly claim to lack notice of Grammer's intent to pursue a claim for statutory conversion against it.

IT IS SO ORDERED.[3]

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 15, 2019

---

[3] Both parties requested oral argument on their objections.  The Court is not obligated to hold a hearing on objections to a Magistrate Judge's Report and Recommendation and in any event finds that a hearing would not assist the Court in determining the issues raised in the parties' objections.  *See* E.D. Mich. L.R. 7.1(f)(1).